Filed 2/13/18

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HONG SANG MARKET, INC.,<br><br>      Plaintiff, Cross-defendant and<br>      Respondent,<br><br>v.<br><br>VIVIEN PENG,<br><br>      Defendant, Cross-complainant and<br>      Appellant. | A140653<br>A141640<br><br>(City and County of San Francisco<br>Super. Ct. No. CGC-11-509287) |

These appeals arise out of a commercial tenancy dispute. In one appeal, defendant and cross-complainant Vivien Peng challenges a judgment awarding damages for back-due rent to her former landlord, plaintiff and cross-defendant Hong Sang Market, Inc. (Hong Sang). Peng argues that a judgment in a prior unlawful detainer action against her, in which Hong Sang was awarded one month's back-due rent along with possession of the premises, has a res judicata effect and bars any further claims for rent owed to Hong Sang.

In the other appeal, Peng challenges an order awarding attorney fees and costs to Hong Sang.[1] She contends that fees incurred by Hong Sang in defending against a cross-complaint she filed are outside the scope of the parties' contractual attorney fee clause, that fees may not be awarded for work on a motion to strike the cross-complaint as a

---

[*]Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.

[1]On the court's own motion, we consolidate the appeals in case numbers A140653 and A141640 for purposes of decision.

strategic lawsuit against public participation[2] (SLAPP) in light of this court's earlier decision reversing orders granting the motion and awarding statutory attorney fees, and that some fees appear to have been incurred before the effective date of the attorney fee clause or may be duplicative of fees recovered in the unlawful detainer action.

In the published portion of this opinion, we conclude the unlawful detainer judgment did not preclude Hong Sang from pursuing a separate civil action for back-due rent that accrued in months other than the one month for which damages were awarded in the unlawful detainer action. In the unpublished portion of the opinion, we conclude the trial court erred in awarding Hong Sang attorney fees incurred in defending against Peng's cross-complaint, and we also make an adjustment to the fee award to ensure that Peng receives the benefit of an agreed-upon reduction in the award associated with fees incurred before the effective date of the attorney fee clause. Accordingly, we shall modify the attorney fee award but otherwise affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Peng's Tenancy*

Hong Sang owned a two-unit commercial building in San Francisco. In 2002, Ming Kee Game Birds, Inc. (Ming Kee) leased the entire premises and sublet one of the two units to Peng for a period of ten years.

Ming Kee sued Peng for breach of the sublease in 2004. Peng cross-complained against Ming Kee and ended up securing a judgment against Ming Kee in the sum of $46,545. In 2009, Peng was granted an additional award of attorney fees payable by Ming Kee in the sum of $47,800. She managed to collect $46,500 in partial satisfaction of the outstanding judgment.

In August 2009, while Peng was still attempting to collect her judgment against Ming Kee, she was informed that Hong Sang and Ming Kee had agreed to terminate the master lease. A new tenant, Ming's Poultry, LLC, immediately took possession of the property formerly leased by Ming Kee and continued the same poultry business that had

---

[2]Code Civ. Proc., § 425.16.

2

been conducted by Ming Kee. According to Peng, the change in ownership was a fraudulent conveyance designed to prevent her from collecting the unpaid portion of the judgment against Ming Kee through a setoff of rent owed under the sublease. Peng rejected Hong Sang's offer of a lease and demand for rent.

As of September 2009, Peng remained in possession of the premises with Hong Sang's knowledge and consent. By operation of law, she became Hong Sang's tenant at the rental rate of $4,725 per month. Hong Sang filed an unlawful detainer action against Peng in 2009 but ultimately dismissed the case voluntarily in early January 2011, when it acknowledged that the three-day notice to pay rent or quit that was served on Peng in 2009 was arguably defective. Peng did not pay any rent for the premises during the period from September 2009 through February 2011.

In January 2011, Hong Sang served Peng with a written notice of change in terms of the tenancy pursuant to Civil Code section 827 (the section 827 notice). The change in terms became effective on March 1, 2011. Among other things, Hong Sang confirmed that Peng's monthly rent was $4,725. It also amended the terms of the tenancy to include an attorney fee clause, which provides in relevant part that the prevailing party in "any legal action, arbitration or proceeding arising out of or relating to the . . . tenancy" shall be entitled to attorney fees and costs "reasonably and actually incurred in the action or proceeding by the prevailing party."

### *Hong Sang's Unlawful Detainer Lawsuit*

Following the effective date of the section 827 notice, Peng paid Hong Sang rent of $4,725 per month in March and April 2011. In May 2011, Peng became delinquent in her rent payments. On May 13, 2011, Hong Sang served Peng with a three-day notice to pay rent or quit as well as a thirty-day notice to quit. The three-day notice to pay rent or quit stated that Peng's rent was delinquent in the amount of $4,725 for the month of May 2011 but also expressly reserved Hong Sang's rights to recover rent for the period before March 1, 2011, in a separate legal action. Peng did not comply with either of the May 2011 notices.

3

Hong Sang filed an unlawful detainer action against Peng in June 2011. It sought to recover possession of the premises and requested back-due rent in the amount of $4,725, which was the amount demanded for the month of May 2011 in the three-day notice to pay rent or quit. In September 2011, the trial court granted summary judgment in favor of Hong Sang in the unlawful detainer action. The judgment awarded Hong Sang possession of the premises and directed Peng to pay $4,725 in back-due rent. In an amended judgment, the court awarded Hong Sang an additional $21,669 in attorney fees and $845 in costs attributable to the unlawful detainer action. Peng did not appeal the 2011 unlawful detainer judgment and it subsequently became final.

### Hong Sang's Breach of Contract Lawsuit and Peng's Cross-complaint

In March 2011, Hong Sang filed an action for breach of contract against Peng in which it sought back-due rent for the period from September 2009 through February 2011.[3] It sought a total of $85,050 as damages for back-due rent plus attorney fees. Hong Sang's breach of contract lawsuit is the subject of this appeal.

Peng filed a cross-complaint against Hong Sang, Ming Kee, and Ming's Poultry, LLC. Peng alleged four causes of action against Hong Sang: interference with contractual relations, breach of the covenant of quiet enjoyment, declaratory relief, and conspiracy. Peng alleged that Hong Sang had falsely advised her that Ming Kee was in default under the master lease and that her sublease was terminated as a result. She claimed that she was forced to hire an attorney as a consequence and incur attorney fees and costs to defend herself against the unlawful detainer action filed by Hong Sang in 2009. In the conspiracy cause of action, Peng alleged that the cross-defendants had conspired to render Ming Kee insolvent and prevent her from collecting her judgment against Ming Kee by offsetting the amount of the judgment against rents owed to Ming Kee. The declaratory relief cause of action sought a declaration of the parties' rights and duties pertaining to the premises occupied by Peng.

[3]Although Hong Sang's breach of contract action was filed before the unlawful detainer action, the judgment in the unlawful detainer action was entered before the judgment in the breach of contract action.

4

***Anti-SLAPP Motion and Disposition of Peng's Cross-complaint***

Hong Sang filed a special motion under Code of Civil Procedure section 425.16 (anti-SLAPP motion) to strike three of the causes of action in Peng's cross-complaint on the ground they were based on an act in furtherance of its right to free speech—i.e., the filing of an unlawful detainer action. The anti-SLAPP motion did not seek to strike the declaratory relief cause of action. The trial court granted Hong Sang's special motion to strike the challenged causes of action, reasoning that they arose at least in part from protected activity. The court awarded Hong Sang attorney fees of $7,834.75 and costs of $3,953 as the prevailing moving party on the special motion to strike. (Code Civ. Proc., § 425.16, subd. (c)(1).) Peng appealed the court's orders granting Hong Sang's anti-SLAPP motion and awarding fees and costs under the anti-SLAPP statute in appeal numbers A133044 and A134394, which we consolidated for purposes of decision.

On appeal, we reversed the trial court's order granting Hong Sang's anti-SLAPP motion. We concluded that the challenged causes of action did not arise from protected activity. We did not reach the question of whether Peng had demonstrated a probability of prevailing on the merits of her causes of action. The reversal required that we also vacate the award of attorney fees and costs because there was no longer a statutory basis for the award.

While the court's anti-SLAPP order was on appeal, Peng filed an amended cross-complaint containing a single cause of action for declaratory relief against Hong Sang. In 2012, the court granted a demurrer without leave to amend as to the declaratory relief cause of action. The court noted that the controversy alleged in the declaratory relief cause of action no longer existed. Peng did not challenge the court's order dismissing the declaratory relief cause of action.

After this court issued the remittitur in the appeals challenging the court's anti-SLAPP orders, Peng filed a second amended cross-complaint that re-alleged the causes of action against Hong Sang for interference with contractual relations, breach of the covenant of quiet enjoyment, and conspiracy. Peng subsequently requested that the court

5

dismiss her cross-complaint. The court entered judgment in favor of Hong Sang on the cross-complaint in October 2013.

### *Court Trial on Breach of Contract Cause of Action*

The single cause of action in Hong Sang's operative complaint for breach of contract proceeded to trial in June 2012. As noted, Hong Sang sought a total of $85,050 from Peng for back-due rent covering the period from September 2009 through February 2011.

Before trial, Peng filed a motion for judgment seeking to dismiss the breach of contract cause of action on the ground that it was barred by the doctrines of res judicata and collateral estoppel. She argued that the September 2011 unlawful detainer judgment awarding $4,725 as back-due rent for the month of May 2011 has a res judicata effect that precludes a separate lawsuit seeking recovery of rent owed for the period from September 2009 through February 2011. Peng argued that Hong Sang's claim for back-due rent gave rise to a single cause of action that could not be split between two different lawsuits. She acknowledged she had not pleaded res judicata or collateral estoppel as affirmative defenses but argued there was no opportunity to plead those defenses at the time she answered the operative complaint in August 2011 because the September 2011 unlawful detainer judgment had not yet been entered at that time. Over Hong Sang's objection, the court allowed Peng to present her res judicata and collateral estoppel defenses.

The matter was tried before the court on stipulated facts. In essence, Peng agreed that she owed Hong Sang rent of $4,725 per month for the period from September 2009 through February 2011 if the court rejected her res judicata defense. The court trial therefore turned solely upon the legal question of whether the unlawful detainer judgment has a res judicata or collateral estoppel effect that precludes Hong Sang from recovering additional amounts of back-due rent beyond the monthly rent for May 2011 that was awarded in the unlawful detainer action.

The trial court ruled in favor of Hong Sang and awarded damages of $85,050 plus prejudgment interest of $18,075.39. The court rejected Peng's res judicata claim,

6

reasoning that claim preclusion does not apply to matters that could not have been tried in the first action. As the court explained in its statement of decision, because Hong Sang was limited by statute in the amount of rent it could recover in an unlawful detainer action, it had no choice but to file two separate actions to achieve both the eviction of Peng and the payment in full of back-due rent.

Following entry of judgment in favor of Hong Sang, Peng timely appealed the judgment in appeal number A140653.

### *Award of Attorney Fees and Costs*

Hong Sang moved for an award of attorney fees and costs. It sought $118,096.33 as contractual attorney fees on the ground that the express terms of the parties' rental agreement, as modified by the section 827 notice, permitted the prevailing party in an action arising out of the tenancy to recover reasonable attorney fees and costs. Hong Sang also sought costs totaling $2,271.95.

Of the amount sought as attorney fees, $56,956.33 was requested for work performed by the law firm of Steven Adair MacDonald & Associates, P.C. (the Steven Adair firm), and $61,140 was requested for work performed by the law firm of Bradley Curley Asiano Barrabee Abel & Kowalski (the Bradley Curley firm). The Steven Adair firm primarily worked on the complaint and Hong Sang's claim for back-due rent. The Bradley Curley firm is identified as insurance defense counsel that was retained to defend Hong Sang against Peng's cross-complaint. The Bradley Curley firm was thus involved in litigating the anti-SLAPP motion and the subsequent appeal of the order granting the anti-SLAPP motion.

Peng opposed the motion for attorney fees and costs. With respect to fees claimed by the Bradley Curley firm, which defended against the cross-complaint, Peng argued that the acts giving rise to the cross-complaint occurred well before the effective date of the attorney fee clause contained in the section 827 notice. Peng also pointed out that a significant part of the work done by the Bradley Curley firm related to the anti-SLAPP motion and subsequent appeal. According to Peng, because the anti-SLAPP order and associated statutory fee award were overturned by this court, Hong Sang should not

7

recover the fees it incurred for that work on the basis of a contractual attorney fee provision. Accordingly, she asked that the court deny the request for fees billed by the Bradley Curley firm in its entirety.

Peng also challenged the fee request submitted with respect to work performed by the Steven Adair firm but only sought to reduce a portion of the fees incurred. First, she claimed that a portion of the fees should be disallowed because they were incurred before the effective date of the attorney fee clause. Second, she asserted that $528.50 should be deducted from any fee award because the tasks associated with those fees related to the unlawful detainer action, for which Hong Sang had already received an attorney fee award. Finally, she disputed a portion of the claimed fees that were associated with the anti-SLAPP motion. Altogether, Peng sought to reduce the fees claimed by the Steven Adair firm by at least $8,565.45.

At the hearing on the attorney fees motion, the court agreed to reduce the fee award by the amount attributable to work performed before the effective date of the attorney fee clause. The parties agreed that approximately $5,000 of the fees fell into that category. At the request of Hong Sang's counsel, the court divided the $5,000 reduction evenly between the Steven Adair firm and the Bradley Curley firm, with the fees for each being reduced by $2,500. Aside from the $5,000 reduction in the fee award for work performed before the effective date of the attorney fee clause, the court otherwise rejected Peng's arguments seeking to reduce or deny the claimed fees. Accordingly, the court awarded Hong Sang its requested costs of $2,271.95 plus contractual attorney fees totaling $113,096.33, composed of $58,640 in fees for work performed by the Bradley Curley firm and $54,456.33 in fees for work performed by the Steven Adair firm.

The court entered an amended judgment that added the attorney fees and cost award to the judgment for damages and prejudgment interest. Altogether, the amended judgment requires Peng to pay $218,493.67 to Hong Sang. Peng timely appealed the amended judgment in appeal number A141640.

8

## I. *Res Judicata Effect of Unlawful Detainer Judgment*

Peng contends that the September 2011 unlawful detainer judgment in which Hong Sang was awarded one month's back-due rent has a res judicata or collateral estoppel effect that bars any further actions for back-due rent. Although she acknowledges that Civil Code section 1952, subdivision (b) (hereafter section 1952(b)), expressly permits a landlord to bring a separate action for back-due rent after bringing an unlawful detainer action to recover possession of the premises, she nonetheless argues that a landlord may not split a claim for rent between an unlawful detainer action and a subsequent civil action. Because the relevant facts are undisputed and the application of res judicata principles presents a question of law, we apply de novo review in assessing Peng's claim of error. (*Noble v. Draper* (2008) 160 Cal.App.4th 1, 10.)

### A. **Waiver as a Result of Delay in Asserting Affirmative Defense**

Before addressing the merits of Peng's claim, we first consider Hong Sang's contention that Peng waived any affirmative defenses premised upon res judicata principles by failing to raise them in her original answer and by not being diligent in seeking to amend her answer. For her part, Peng argues that Hong Sang's challenge to the order authorizing the amendment is not properly before this court because Hong Sang did not file a cross-appeal, and even if it had, Hong Sang has failed to establish that the court abused its discretion in permitting the amendment.

As an initial matter, Peng is mistaken in arguing that Hong Sang was required to file a cross-appeal in order to raise this issue. An intermediate ruling that necessarily affects a final judgment is properly within the scope of our review of the judgment without the need for the party challenging that intermediate ruling to file its own cross-appeal. (See Code Civ. Proc., § 906.) The purpose of this statutory exception to the general rule requiring an aggrieved party to file its own appeal is to allow a respondent to assert a legal theory that would result in affirming a judgment even though the trial court did not rely on that theory. (*Fuller v. Bowen* (2012) 203 Cal.App.4th 1476, 1483, fn. 6.) In this case, because the trial turned solely on the viability of Peng's res judicata defense,

9

we would necessarily affirm the judgment if we were to conclude the court erred in allowing Peng to amend her answer to include such a defense. Therefore, Hong Sang's challenge to the intermediate ruling allowing the amendment is properly before us even though it did not file its own cross-appeal from the final judgment.

Leave to amend a pleading, including an answer, is entrusted to the sound discretion of the trial court. (See *Garcia v. Roberts* (2009) 173 Cal.App.4th 900, 909; Code Civ. Proc., § 473, subd. (a)(1) [court has discretion "upon any terms as may be just" to allow an amendment to any pleading].) We will not disturb the trial court's exercise of discretion unless there is a clear showing of abuse. (*Garcia v. Roberts,* at p. 909.) "[A]bsent a showing of prejudice to the adverse party, the rule of great liberality in allowing amendment of pleadings will prevail." (*Board of Trustees of Leland Stanford Jr. University v. Superior Court* (2007) 149 Cal.App.4th 1154, 1163.)

As support for its claim that the court abused its discretion in allowing Peng to amend her answer, Hong Sang contends she presented no evidence to excuse her extreme lack of diligence in seeking to amend the answer. It also argues that it suffered prejudice because it was required to address a new and complex defense "without the benefit of either research or pretrial discovery."

We are not persuaded that the court exceeded the scope of its discretion in allowing the amendment. As a practical matter, Peng could not have asserted a res judicata defense when she first filed her answer because there was no judgment at the time in the unlawful detainer action. (See *Solari v. Atlas-Universal Service, Inc.* (1963) 215 Cal.App.2d 587, 592 [res judicata defense must be pleaded when facts supporting it arise].) And, while Peng did not seek to raise a res judicata defense until over 10 months later, when the matter was set for trial, we fail to see how Hong Sang was prejudiced by any delay in Peng's pursuit of a res judicata defense. The issue was purely legal in nature. Indeed, the parties agreed on stipulated facts for purposes of the court trial. It is unclear what, if any, discovery Hong Sang might have conducted that would bear upon a res judicata defense. Although Hong Sang claims it was compelled to respond to a complex defense without the benefit of research, our review of the record reveals that

10

Hong Sang was afforded an opportunity to respond to the res judicata defense both in its trial brief and in an opposition to an in limine motion. Under the circumstances, we discern no abuse of discretion in permitting Peng to assert a res judicata defense on the eve of trial. Accordingly, we turn to the merits of Peng's defense.

### B. Res Judicata Principles

"As generally understood, '[t]he doctrine of *res judicata* gives certain *conclusive effect* to a *former judgment* in subsequent litigation involving the same controversy.' " (*People v. Barragan* (2004) 32 Cal.4th 236, 252.) The res judicata doctrine promotes judicial economy by precluding piecemeal litigation that may occur if a single cause of action is split into more than one lawsuit or if a particular issue has already been decided in an earlier lawsuit. (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 897.) " 'In its primary aspect,' commonly known as claim preclusion, it 'operates as a bar to the maintenance of a second suit between the same parties on the same cause of action. [Citation.] 'In its secondary aspect,' commonly known as collateral estoppel, '[t]he prior judgment . . . "operates" ' in 'a second suit . . . based on a different cause of action . . . "as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action." ' " (*People v. Barragan, supra,* 32 Cal.4th at pp. 252–253.)

Although the res judicata doctrine encompasses both claim and issue preclusion, the term "res judicata" has sometimes been used by California courts to denote claim preclusion whereas the term "collateral estoppel" has denoted issue preclusion. (See *Mycogen Corp. v. Monsanto Co., supra,* 28 Cal.4th at p. 896, fn. 7; *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341, fn. 3; see also *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) We shall follow the lead of our Supreme Court in using the term "res judicata" to signify the broader doctrine, including both its primary and secondary aspects, while using "the terms 'claim preclusion' to describe the primary aspect of the res judicata doctrine and 'issue preclusion' to encompass the notion of collateral estoppel." (*DKN Holdings LLC v. Faerber, supra,* at p. 824.)

11

" 'The prerequisite elements for applying the doctrine to either an entire cause of action or one or more issues are the same: (1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding.' " (*People v. Barragan, supra,* 32 Cal.4th at p. 253.) A party who asserts claim or issue preclusion as a bar to further litigation bears the burden of proving that the requirements of the doctrine are satisfied. (*Vella v. Hudgins* (1977) 20 Cal.3d 251, 257.)

California courts apply the "primary rights" theory in assessing whether two proceedings involve identical causes of action. (See *Mycogen Corp. v. Monsanto Co., supra,* 28 Cal.4th at p. 904.) "The plaintiff's primary right is the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based. [Citation.] The scope of the primary right therefore depends on how the injury is defined. A cause of action comprises the plaintiff's primary right, the defendant's corresponding primary duty, and the defendant's wrongful act in breach of that duty." (*Federation of Hillside & Canyon Assns. v. City of Los Angeles* (2004) 126 Cal.App.4th 1180, 1202.) A primary right is distinct from the legal theory on which liability is premised or the remedies that may be sought. Thus, while a primary right may support multiple theories of liability or various forms of relief, it gives rise to a single, indivisible cause of action for purposes of applying claim preclusion principles. (*Mycogen Corp. v. Monsanto Co., supra,* at p. 904.) For that reason, the claim preclusion aspect of the res judicata doctrine generally bars a second action brought solely to recover greater or different damages. (*Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 585.) The rule prohibiting a plaintiff from splitting a cause of action into several suits is likewise an application of claim preclusion principles. (*Allstate Ins. Co. v. Mel Rapton, Inc.* (2000) 77 Cal.App.4th 901, 907.)

**C. Splitting a Cause of Action for Back-Due Rent Between an Unlawful Detainer Action and an Ordinary Civil Action**

It is undisputed that two of the three requisites for the application of claim preclusion are present here. The unlawful detainer proceeding resulted in a final judgment on the merits and the parties in this action are identical to the parties in the unlawful detainer action. The parties' dispute turns on whether the claim raised in this breach of contract action for back-due rent is identical to the claim raised in the unlawful detainer action, in which Hong Sang sought and was awarded one month's rent. Peng asserts that the claims are identical and amount to Hong Sang splitting a single cause of action for accrued but unpaid rent into two different lawsuits.

At first blush, Peng's argument appears meritorious. After all, Hong Sang sought accrued and unpaid rent in two different actions, albeit for different time periods. But the argument proves to be meritless when one takes into account that the back-due rent cause of action was "split" between two very different legal proceedings—a summary unlawful detainer action and an ordinary civil lawsuit. An unlawful detainer action is a summary proceeding designed to adjudicate the right of immediate possession; the only claims that are cognizable in such a proceeding are those bearing directly on the immediate right of possession. (*Vella v. Hudgins, supra,* 20 Cal.3d at p. 255; see generally Code Civ. Proc., § 1159 et seq.) Cross-complaints and affirmative defenses are permissible only to the extent that they would, if meritorious, preclude a court from removing a tenant from the premises. (*Vella v. Hudgins, supra,* at p. 255.) It is for this reason that "a judgment in an unlawful detainer usually has very limited res judicata effect and will not prevent one who is dispossessed from bringing a subsequent action to resolve questions of title [citations] or to adjudicate other legal and equitable claims between the parties . . . ." (*Ibid.*)

An unlawful detainer judgment has a limited res judicata effect because the claim preclusion aspect of the res judicata doctrine applies only to matters that were raised or

13

*could have been raised* in the earlier action on matters that were litigated or litigable.[4] (See *Villacres v. ABM Industries Inc., supra,* 189 Cal.App.4th at p. 576; *Amin v. Khazindar* (2003) 112 Cal.App.4th 582, 589–590.)  A necessary corollary to this statement of the law relating to claim preclusion is that a prior judgment generally does not bar a subsequent claim if the matter could <u>not</u> have been raised or litigated in the earlier action.  Thus, in a situation in which a " 'court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground . . . , then a second action in a competent court presenting the omitted theory or ground should be held not precluded.' " (*Merry v. Coast Community College Dist.* (1979) 97 Cal.App.3d 214, 229; see, e.g., *Harris v. Grimes* (2002) 104 Cal.App.4th 180, 188 [where federal court faced with federal civil rights claim declined to exercise pendent jurisdiction over plaintiff's state law claims, plaintiff was not precluded from pursuing state law claims in state court].)  Because the scope of an unlawful detainer proceeding is limited, the preclusive effect of an unlawful detainer judgment is likewise limited.

A cause of action for back-due rent falls into the category of claims that a court has limited power to decide in an unlawful detainer proceeding.  (See Friedman et al., Cal. Practice Guide: Landlord-Tenant (2017) § 9:416.1, p. 9-144 (hereafter Friedman).)  If a landlord proceeds by way of a three-day notice to "pay or quit" when the tenant is in default in rent payments, the landlord is limited to recovering rent that accrued within one year of the notice.  (Code Civ. Proc., § 1161, subd. (2); see Friedman, *supra*, § 9:416.1, p. 9-144.)  The amount of back-due rent is generally limited to that demanded in the three-day notice.  (Friedman, *supra,* § 9:312, p. 9-90.)  A landlord proceeding by way of a three-day notice for nonpayment of rent may also recover damages for rental losses occurring after the period covered by the three-day notice expires.  (Friedman, *supra,* § 8.58.2, pp. 8-25 to 8-26; Code Civ. Proc., § 1174, subd. (b).)  If a landlord proceeds by

---

[4]Issue preclusion, or collateral estoppel, does not apply unless the issue was actually litigated and necessarily decided in the former proceeding.  (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511.)  Consequently, it is not enough that the issue could have been litigated in the earlier action for purposes of applying issue preclusion.

14

way of a 30-day notice of termination of a rental agreement, the landlord may not recover back-due rent but may seek damages for the reasonable rental value of the premises from the termination of the tenancy until entry of the unlawful detainer judgment.  (Friedman, *supra,* §§ 8:58 & 8:63, pp. 8-24 & 8-27; Code Civ. Proc., § 1174, subd. (b); *Hudec v. Robertson* (1989) 210 Cal.App.3d 1156, 1163; *Saberi v. Bakhtiari* (1985) 169 Cal.App.3d 509, 513–515.)

By contrast, the right to recover back-due rent is not so limited in an ordinary civil action premised upon section 1951.2 of the Civil Code.  A landlord can generally recover up to four years of back-due rent if the claim is based upon a written lease agreement.  (Code Civ. Proc., § 337.2 [four-year statute of limitations for breach of written lease].)  Because a court has no jurisdiction to award more than one year's back-due rent in an unlawful detainer action, res judicata principles suggest that an unlawful detainer judgment should not preclude a separate, civil action for back-due rent that is not recoverable in an unlawful detainer proceeding.

The Legislature has gone further in limiting the res judicata effect of an unlawful detainer judgment in section 1952(b).  The statute provides, with an exception not relevant here,[5] that a lessor who brings an unlawful detainer action is not precluded from bringing a separate action to recover rent under Civil Code section 1951.2, provided that the lessor may not recover damages in the subsequent civil action "for any detriment for which a claim for damages was made and determined on the merits in the previous

---

[5]The exception applies when, during the course of an unlawful detainer proceeding, possession no longer becomes an issue and the action is converted to an ordinary civil action in which the lessor may seek relief not otherwise recoverable in an unlawful detainer proceeding.  (See Civ. Code, §§ 1952(b), 1952.3, subd. (a).)

action."[6]  (§ 1952(b).)  This statutory provision modifies the general rule that a judgment in an earlier action precludes a party from raising issues in later litigation that *could have been raised* in the earlier action.  (Cf. *Villacres v. ABM Industries Inc., supra,* 189 Cal.App.4th at p. 576.)  Section 1952(b) permits a lessor to pursue an action for damages in subsequent civil litigation even though the lessor could have sought those same damages in a prior unlawful detainer action, as long as the damages claim for any particular detriment was not actually determined on the merits in the unlawful detainer action.

This principle is demonstrated in *Northrop Corp. v. Chaparral Energy, Inc.* (1985) 168 Cal.App.3d 725, 727 (*Northrop*), in which a lessor filed an unlawful detainer action and sought, in addition to the restitution of the premises, unpaid rent plus reasonable rental value until the lessee vacated the premises.  The lessor chose to litigate only the issue of possession in the unlawful detainer action and reserve its right to recover unpaid rent and reasonable rental value in a separate civil action.  (*Id.* at p. 728.)  The trial court entered a judgment awarding possession to the lessor but also ruling that the lessor took nothing by way of its claims for unpaid rent and rental value damages.  (*Id.* at pp. 728–729.)  On appeal, the lessor objected that the judgment erroneously implied the court had determined issues related to unpaid or lost rent; the lessor complained that the lessee might attempt to use the judgment to preclude the recovery of rent damages in the separate civil action.  (*Id.* at p. 729.)  The Court of Appeal agreed with the lessor and modified the judgment to specify that the question of unpaid rent and reasonable rental value was specifically reserved to the separate civil action.  (*Id.* at p. 730.)  The appellate

---

[6]Section 1952(b) provides as follows:  "Unless the lessor amends the complaint as provided in paragraph (1) of subdivision (a) of Section 1952.3 to state a claim for damages not recoverable in the unlawful detainer proceeding, the bringing of an action under the provisions of Chapter 4 (commencing with Section 1159) of Title 3 of Part 3 of the Code of Civil Procedure does not affect the lessor's right to bring a separate action for relief under Sections 1951.2, 1951.5, and 1951.8, but no damages shall be recovered in the subsequent action for any detriment for which a claim for damages was made and determined on the merits in the previous action."

court relied upon section 1952(b), which "explicitly recognize[s] the propriety of obtaining possession by unlawful detainer and leaving monetary damages to subsequent litigation." (*Id.* at p. 729, fn. omitted.) According to the court, although the unlawful detainer statutes authorize a lessor to recover rent damages in an unlawful detainer action, "nothing in the statutes *requires* the landlord to litigate his rental claims in the unlawful detainer rather than a separate civil proceeding, as authorized by Civil Code section 1951.2." (*Ibid.*) Thus, even where the lessor actually sought damages for lost rent and rental value loss, it was not precluded from pursuing those same claims in a separate civil action as long as the claims were not actually determined on the merits in the unlawful detainer action.

*Northrop* confirms that a lessor may choose to pursue rent damages in a separate civil suit even though it is authorized to seek rent damages in a prior unlawful detainer action, but its ruling does not answer the question presented here. Specifically, may a lessor pursue a claim for some portion of back-due rent in an unlawful detainer action and still seek other claims for back-due rent in a separate civil action? The answer can be found by focusing on language in section 1952(b) that limits a lessor's right to recover damages in a subsequent civil action for "any detriment" for which damages were sought and finally determined on the merits in a prior unlawful detainer action. If "any detriment" is interpreted to mean the entire category of damages relating to back-due rent, then fully litigating a claim for some portion of back-due rent in an unlawful detainer action would bar a lessor from pursuing any further claims for back-due rent in a subsequent civil action. But if "any detriment" denotes discrete, monthly (or other periodic) claims for rent, then the mere fact a claim for back-due rent was finally determined on the merits in an unlawful detainer action would not preclude a lessor from pursuing additional back-due rent in a separate civil action. As we explain, the latter interpretation of the term "any detriment" is the more plausible one.

We are guided by familiar principles in construing statutory language. Our primary goal is to "ascertain legislative intent so as to effectuate the purpose of the law. [Citation.] To do so, we first examine the language of the statute, giving the words their

ordinary, commonsense meaning and according significance to all words used, if possible. [Citations.] 'The statute's words generally provide the most reliable indicator of legislative intent; if they are clear and unambiguous, "[t]here is no need for judicial construction and a court may not indulge in it." [Citations.] However, where 'the statutory language is ambiguous on its face or is shown to have a latent ambiguity such that it does not provide a definitive answer, we may resort to extrinsic sources to determine legislative intent.' " (*Guillen v. Schwarzenegger* (2007) 147 Cal.App.4th 929, 938–939.)

It is reasonable to conclude the Legislature did not intend the term "any detriment" to refer to the entire category of claims for back-due rent. Such an interpretation would preclude a lessor from pursuing any further back-due rent claims in a separate civil action if *any* back-due rent claims were finally determined on the merits in an unlawful detainer action. But that interpretation is directly at odds with the California Law Revision Commission's expressly stated view at the time subdivision (b) was added to Civil Code section 1952 that damages may be recovered in *both* an unlawful detainer action and a civil action, as long as they are not duplicative: " 'The lessor's right to recover damages for loss of the benefits of the lease *should be independent* of his right to bring an action for unlawful detainer to recover the possession of the property. The damages should be recoverable in a separate action *in addition to* any damages recovered as part of the unlawful detainer action.' " (*Walt v. Superior Court* (1992) 8 Cal.App.4th 1667, 1678, citing Recommendation Relating to Real Property (1969) 9 Cal. Law Revision Com. Rep. at p. 162.) The California Law Revision Commission clarified that, " '[o]f course, the lessor should not be entitled to recover twice for the same items of damages.' " (*Ibid.*) This explanation of the Legislature's intent is inconsistent with the notion that recovery of back-due rent in an unlawful detainer action bars further, non-duplicative claims for additional back-due rent in an ordinary civil action.

Furthermore, interpreting the term "any detriment" to encompass the entire category of claims for back-due rent would lead to an absurd result. (See *Horwich v. Superior Court* (1999) 21 Cal.4th 272, 280 [statutes should be interpreted to avoid

18

anomalous or absurd consequences].) Ordinarily, res judicata principles would not bar a subsequent claim if the matter could not have been raised in the earlier action. (See *Villacres v. ABM Industries Inc., supra,* 189 Cal.App.4th at p. 576.) As applied to the case of back-due rent, the res judicata doctrine would suggest that a landlord could seek back-due rent in a subsequent civil action even if the landlord had recovered back-due rent in a prior unlawful detainer action, as long as the back-due rent sought in the civil action was outside the limited scope of relief afforded in a summary unlawful detainer proceeding. But interpreting "any detriment" in section 1952(b) to encompass all back-due rent claims would have the consequence of barring all such claims in a subsequent civil action if *any* back-due rent was recovered in the unlawful detainer action, even if the back-due rent sought in the civil action could not have been pursued in an unlawful detainer action. In other words, this interpretation of section 1952(b) gives greater preclusive effect to an unlawful detainer judgment than would be the case under res judicata principles. This result is anomalous because the plain intent of section 1952(b) is to *limit* the res judicata effect of a prior unlawful detainer action.

Peng nonetheless urges that case law supports her contention that res judicata principles preclude a landlord from splitting a cause of action for back-due rent between and unlawful detainer action and an ordinary civil action. The cases she relies upon are inapposite. She claims that *McCaffrey v. Wiley* (1951) 103 Cal.App.2d 621 is "most similar" to this case. In *McCaffrey,* a plaintiff filed an action to eject a tenant and was awarded possession. The plaintiff then filed a second action seeking damages for the wrongful withholding of the property until judgment was rendered in the ejectment action. (*Id.* at p. 622.) The Court of Appeal held that the second action seeking monetary damages was barred because it rested on the same primary right adjudicated in the first action—i.e., the right of the plaintiff to possess the land. (*Id.* at pp. 624–625.) As this brief factual recitation demonstrates, *McCaffrey* is not similar to this case. It did not involve a summary unlawful detainer action followed by an ordinary civil action. Instead, *McCaffrey* concerned an attempt to split a cause of action arising from a single primary right between two ordinary civil actions. Further, insofar as *McCaffrey* stands

19

for the principle that the right of possession and damages for wrongful possession must be litigated in a single action, it is directly at odds with statutory and case law specifying that recovery of possession in an unlawful detainer action does not bar a separate action for damages. (Code Civ. Proc., § 1174.5 [unlawful detainer judgment does not relieve lessee of liability for rental damages]; see *Northrop, supra*, 168 Cal.App.3d at p. 729.)

Likewise, Peng's reliance on *Lekse v. Municipal Court* (1982) 138 Cal.App.3d 188 is unavailing. In *Lekse,* landlords sued a tenant for four months of back-due rent but split their demand into two separate smalls claims lawsuits each seeking recovery of two months' rent in order to fall under the jurisdictional amount allowed in small claims actions. The landlords secured judgments for back-due rent in both actions. (*Id.* at p. 190.) The appellate court declared one of the two judgments void, holding that there is but one cause of action for all past rent due and owing at the time a complaint is filed. (*Id.* at pp. 194–195.) *Lekse* has little bearing upon the issue before us. The resolution of Peng's claim turns on the preclusive effect given to an unlawful detainer judgment in light of res judicata principles and the statutory scheme governing unlawful detainer actions. *Lekse* did not involve an unlawful detainer action and consequently provides no insight into whether a landlord may split a rent cause of action between an unlawful detainer action and an ordinary civil action.

Peng also purports to rely on *Northrop* for the principle that a landlord may not split a claim for back-due rent between an unlawful detainer action and an ordinary civil action. She claims that if Hong Sang had wanted to preserve its claim for back-due rent, it should have "followed the procedure" in *Northrop* and sought possession only in the unlawful detainer action and pursued all claims for back-due rent in a separate civil lawsuit. But *Northrop* merely stands for the proposition that nothing *requires* a landlord to pursue damages for rent claims in an unlawful detainer action. (*Northrop, supra,* 168 Cal.App.3d at p. 729.) It does not suggest a landlord must litigate back-due rent claims in *either* an unlawful detainer action or a subsequent civil action. Further, Hong Sang did not have the option to forego all of its claims for back-due rent in the unlawful detainer action. Because Hong Sang's unlawful detainer was based on the nonpayment of rent, it

20

had to prove that Peng failed to pay the rent demanded in the three-day notice in order to recover possession. The amount of rent due in such a case is assessed as damages. (Code Civ. Proc., § 1174, subd. (b).) It would make no sense to forego such damages when they are necessarily proven to establish the basis for the unlawful detainer. As the trial court observed, Hong Sang had no choice but to split its claims for back-due rent between the unlawful detainer action and the ordinary civil action in order to achieve all of the relief it sought—recovery of possession, an award of the back-due rent demanded in the three-day notice, and an award of all other back-due rent not otherwise recoverable in an unlawful detainer action.

Accordingly, we hold that an unlawful detainer judgment awarding back-due rent does not preclude a lessor from seeking additional back-due rent in an ordinary civil action. However, the lessor is precluded from recovering back-due rent associated with a particular time period in the subsequent civil action if such a claim was actually determined on the merits in the unlawful detainer action. Thus, the lessor is not only precluded from recovering twice for the same items of damages but also may not renew a claim for back-due rent associated with a particular time period if that periodic claim was denied on the merits in the unlawful detainer action.

Because the damages for back-due rent in the unlawful detainer judgment here were limited to the month of May 2011, Hong Sang was not precluded from seeking additional back-due rent covering the period from September 2009 through February 2011 in its breach of contract action. Therefore, the trial court did not err in rejecting Peng's claim that Hong Sang was precluded from seeking additional back-due rent in its civil action after recovering one month's back-due rent in the unlawful detainer action.[7]

---

[7]Peng contends that, even if claim preclusion principles do not bar Hong Sang's back-due rent cause of action, it is barred by the application of issue preclusion principles. The claim is meritless. In the unlawful detainer action, the parties did not litigate the issues bearing upon whether Hong Sang was entitled to back-due rent for the period from September 2009 through February 2011. Indeed, the court's order granting summary judgment in the unlawful detainer action fails to even mention that Peng did not pay rent during that period. There was consequently no determination that Peng owed

## II. *Attorney Fees*

### A. Standard of Review

We ordinarily review an award of attorney fees for abuse of discretion. (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 (*Mountain Air Enterprises*).) The determination of what constitutes a reasonable attorney fee award is committed to the sound discretion of the trial court. (See *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) However, de novo review is warranted when there is a question of law as to the legal entitlement to attorney fees. (*Mountain Air Enterprises, supra,* at p. 751.) "In other words, 'it is a discretionary trial court decision on the propriety or amount of . . . attorney fees to be awarded, but a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo.' " (*Ibid.*)

When attorney fees are awarded to the prevailing party under the terms of a contract, as here, and no extrinsic evidence was offered to interpret the terms of the contract's attorney fee clause, the entitlement to attorney fees is a question of law that we review de novo. (See *Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 702, 705.) Because there was no extrinsic evidence offered to interpret the attorney fee provision in this case, we apply de novo review in assessing whether Hong Sang is entitled to attorney fees under the agreement. As to the propriety of the amount awarded, however, our review is governed by the deferential abuse of discretion standard.

### B. Fees Incurred to Defend Against Peng's Cross-complaint

Peng contends that fees paid to the Bradley Curley firm, which defended against her cross-complaint, fall outside the scope of the parties' attorney fee clause. She argues that the cross-complaint did not arise out of or relate to either the rental agreement or the tenancy. As explained below, because the allegations giving rise to the causes of action

---

back-due rent for any period other than the month of May 2011. Because issue preclusion does not apply unless the issue was actually litigated and necessarily decided in the former proceeding, that principle does not foreclose Hong Sang's cause of action for additional back-due rent. (See *Hernandez v. City of Pomona, supra,* 46 Cal.4th at p. 511.)

22

alleged in the cross-complaint predate the tenancy to which the attorney fee clause applies, we agree with Peng.

A clause in a contract that allocates attorney fees to a prevailing party may be drawn broadly or narrowly. An attorney fee clause that applies to actions or proceedings "arising out of" or "relating to" the agreement is considered a broadly drafted clause that may support an award of attorney fees to the prevailing party in an action alleging both contract and tort claims. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 608; *Moallem v. Coldwell Banker Com. Group, Inc.* (1994) 25 Cal.App.4th 1827, 1831; *Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1342–1343.) The attorney fee clause at issue here is broad in that it provides for an attorney fee award to the prevailing party in "any legal action, arbitration or proceeding *arising out of* or *relating to* the rental agreement or tenancy . . . ." (Italics added.)

There is no dispute that the broad attorney fee clause at issue here encompasses tort claims such as those asserted in Peng's cross-complaint. Further, it is undisputed that Peng's voluntary dismissal of her cross-complaint does not preclude Hong Sang from being considered the prevailing party for purposes of awarding attorney fees. (See *Santisas v. Goodin, supra,* 17 Cal.4th 599 at p. 602 [in voluntary pretrial dismissal cases, Civil Code section 1717 bars recovery of attorney fees associated with contract claims but does not preclude recovery of fees incurred in defending tort claims].) In addition, neither Peng nor Hong Sang have cited any authority or any principle that would bar a party from recovering fees associated with a cause of action that arose before the effective date of an attorney fee clause, as long as the fees sought to be recovered were incurred after the clause's effective date. And, there is no issue concerning whether fees charged by the Bradley Curley firm predated the March 2011 effective date of the attorney fee clause. All of the work performed by the Bradley Curley firm arose out of the cross-complaint, which was not filed until after the clause's effective date. Thus, Peng's challenge to the fees awarded for work performed by the Bradley Curley firm turns solely upon whether her cross-complaint arose from or is related to the rental agreement or tenancy.

23

The thrust of Peng's cross-complaint was that Hong Sang conspired with its lessee Ming Kee, which was subleasing the premises to Peng as of August 2009, to deprive her of the ability to enforce a judgment against Ming Kee by cancelling the master lease and thereby terminating her sublease by operation of law. Peng alleged that Hong Sang interfered with her sublease with Ming Kee, breached the covenant of quiet enjoyment associated with the sublease, and conspired to deprive her of the benefit of the judgment against Ming Kee. She also sought declaratory relief as to the status of her sublease.

The allegations of the cross-complaint plainly arose from and related to the subtenancy relationship between Peng and Ming Kee, and to events that occurred before the tenancy relationship between Peng and Hong Sang came into existence in September 2009. The tort-based duties that Hong Sang allegedly breached predated Peng's tenancy with Hong Sang and existed independently of that tenancy. (Cf. *Exxess Electronixx v. Heger Realty Corp., supra,* 64 Cal.App.4th at p. 711 [tort causes of action were premised upon broker's duty to disclose, which arose "without regard to the terms of the lease and before the lease existed"].) In addition, the alleged breaches of the duties Hong Sang owed to Peng occurred before the inception of the tenancy to which the attorney fee clause applies. Thus, the causes of action alleged in the cross-complaint did not turn upon Peng's tenancy with Hong Sang or arise from any duties created by that relationship.

The only arguable relationship between the cross-complaint and the tenancy was that Peng allegedly continued to suffer harm after she became Hong Sang's tenant by operation of law. Among other things, she alleged that Hong Sang furthered its breach of the covenant of quiet enjoyment associated with her sublease by filing an unlawful detainer action against her in late 2009. Although the unlawful detainer was filed after Peng became Hong Sang's tenant by operation of law, it is not the case that the cause of action for breach of the covenant of quiet enjoyment arose from the tenancy. Rather, that cause of action arose from the covenant of quiet enjoyment associated with her *sublease* and rested on allegations that Hong Sang breached that covenant by conspiring to terminate the master lease with Ming Kee, effectively ending her sublease. The attorney

24

fees incurred by Peng in defending against the unlawful detainer action were simply alleged as an element of damages she suffered resulting from the termination of her sublease.

The role the unlawful detainer action played in the cross-complaint was more fully explored in our opinion in an earlier appeal addressing Hong Sang's anti-SLAPP motion.[8] (*Peng v. Hong Sang Market, Inc.* (Sep. 27, 2012, A133044) [nonpub. opn.].) There, we considered whether the tort causes of action alleged in the cross-complaint arose from protected activity within the meaning of the anti-SLAPP statute. Hong Sang alleged that they arose from the protected activity of filing an unlawful detainer complaint. We rejected this claim, reasoning as follows: "[T]he challenged causes of action are based on Hong Sang Market's allegedly fraudulent termination of the master lease . . . . Hong Sang Market does not explain how it is that the challenged causes of action arise from protected activity. It cannot be said as a matter of law that but for the filing of the unlawful detainer action, Peng would have no basis to pursue the challenged causes of action that seek relief for Hong Sang Market's allegedly fraudulent termination of the master lease." We concluded that the effort to recover attorney fees incurred in defending against the unlawful detainer action was simply an element of damages as opposed to the primary right that sought to be vindicated in the cross-complaint.

The analysis in our earlier opinion addressing Hong Sang's anti-SLAPP motion applies equally here. The cross-complaint arose from and related to Peng's sublease and to Hong Sang's allegedly fraudulent termination of Ming Kee's master lease. Any connection between the cross-complaint and the tenancy was incidental in that Peng allegedly continued to suffer damages during the period of the tenancy as a result of tortious acts that preceded the tenancy. We conclude as a matter of law that fees incurred by Hong Sang to defend against the cross-complaint do not fall within the scope of the attorney fee clause.

---

[8]Our earlier opinion was before the trial court below in connection with the attorney fee motion, and is citable under the law of the case doctrine. (Cal. Rules of Court, rule 8.1115(b)(1).)

Hong Sang's arguments on appeal do not cause us to question our conclusion. It suggests that the attorney fee clause applies to the period before September 2009, when Peng was a subtenant and Ming Kee was the master tenant. Hong Sang argues that Peng was "some form of tenant at the property" at all relevant times. But the attorney fee clause applies only to disputes arising out of or related to the landlord-tenant relationship between Hong Sang and Peng. That tenancy did not exist before September 2009. Peng's subtenancy did not give rise to a landlord-tenant relationship between Peng and Hong Sang. Indeed, it is well settled that there is no privity of contract between a subtenant and the original landlord. (*Marchese v. Standard Realty & Dev. Co.* (1977) 74 Cal.App.3d 142, 147.) Hong Sang also contends the attorney fee clause is broad enough to cover tort claims arising out of the tenancy, but Peng does not dispute that point. The fact remains that the torts alleged in the cross-complaint do not arise out of or relate to the tenancy that began in September 2009 and that is the subject of the attorney fee clause.

Accordingly, it was error to award Hong Sang fees charged by the Bradley Curley firm, which defended against Peng's cross-complaint. Consequently, the fee award must be reduced by $58,640, representing the portion of the fee award attributable to work performed by the Bradley Curley firm. Because all of fees incurred in pursuing the anti-SLAPP motion necessarily related to the cross-complaint, it is unnecessary to address Peng's alternative argument that law of the case principles precluded the trial court from awarding attorney fees for work performed on the anti-SLAPP motion.

As Peng points out, the Bradley Curley firm was not alone in charging for legal services related to the cross-complaint. The Steven Adair firm charged Hong Sang $2,043.50 for services related to pursuing Hong Sang's anti-SLAPP motion in the trial court and on appeal.[9] Because those fees necessarily relate to the cross-complaint, which was the object of the anti-SLAPP motion, they fall outside the scope of the attorney fee

---

[9]Hong Sang does not dispute Peng's calculation of fees attributable to work performed by the Steven Adair firm on the anti-SLAPP motion.

clause. The portion of the fee award attributable to work performed by the Steven Adair firm must therefore be reduced by $2,043.50.

## C. Fees Incurred Before Effective Date of Attorney Fee Clause

Peng claims that the Steven Adair firm, which primarily worked on Hong Sang's complaint for breach of contract, improperly sought $5,993.45 for fees incurred before the March 2011 effective date of the attorney fee clause. Peng acknowledges that the court reduced the fee award to the Steven Adair firm by $2,500 but seeks to have the award reduced by the full amount of fees incurred before March 2011. As we explain, the court did not abuse its discretion in making a $5,000 adjustment to the award to account for fees incurred before the effective date of the attorney fee clause, although it was error to allocate one-half of the reduction to the Bradley Curley firm, which did not perform any legal services before March 2011.

At the hearing on Hong Sang's request for attorney fees, the court agreed to reduce the award by the amount of fees incurred before the effective date of the attorney fee clause.[10] The court asked counsel whether $5,000 was a good estimate of the fees attributable to work performed before March 2011. Although Peng's counsel initially claimed that much more was at stake than just fees incurred before March 2011, counsel ultimately said he would not "quibble over the amount" and offered a "grudging yes" to the court's inquiry as to whether $5,000 was a good estimate. The court later described the $5,000 reduction as an amount as to which "the parties agree" without eliciting an objection from Peng's counsel. At the request of Hong Sang's counsel, the $5,000 reduction was split between amounts owed to the Bradley Curley firm and the Steven Adair firm. Thus, the court reduced the fee award attributable to each firm by $2,500.

Peng not only failed to object to the amount of the reduction but begrudgingly agreed with it. The trial court cannot be charged with error when Peng agreed with the

---

[10]We assume, without deciding, that fees incurred before the effective date of the attorney fee clause may not be recovered by the prevailing party.

court's estimate. Thus, we conclude it was not an abuse of discretion to attribute $5,000 of the fees to work performed before the effective date of the attorney fee clause.

Nevertheless, we conclude it was an abuse of discretion to split the $5,000 reduction in fees between the Bradley Curley firm and the Steven Adair firm. As the record before this court demonstrates, the Bradley Curley firm did not perform any legal work for Hong Sang until May 2011, well after the effective date of the attorney fee clause. Thus, there is no evidentiary support for reducing the fees charged by the Bradley Curley firm on the ground the services for which the fees were charged predated the March 2011 effective date of the attorney fee clause. The entirety of the $5,000 reduction should have been applied to fees charged by the Steven Adair firm.[11] Accordingly, the portion of the fee award that is attributable to services performed by the Steven Adair firm should be reduced by an additional $2,500.

### D.    Fees Associated with Unlawful Detainer

As a final matter, Peng contends that $528.50 in fees charged by the Steven Adair firm "appeared to be *duplicative* of the fees awarded in the unlawful detainer action and should not have been allowed a second time." We are not persuaded.

We agree in principle with Peng's claim that Hong Sang should not recover the same fees twice. But her claim is lacking in factual support. " 'General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice.' " (*Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459, 488.) While Peng has specifically identified the fees in this action she claims are duplicative of fees charged in the unlawful detainer action, she has not provided the court with the billing statements from the

---

[11]The allocation of the $5,000 reduction between the Bradley Curley firm and the Steven Adair firm would be inconsequential if we had otherwise affirmed the fee award in its totality, because Peng would have received the full benefit of the $5,000 reduction subtracted from the aggregate fees awarded with respect to both law firms. However, because we have concluded that Hong Sang is not entitled to recover any fees charged by the Bradley Curley firm, the allocation error is not harmless. Unless the error is corrected, Peng will not receive the benefit of the additional $2,500 offset to which she is entitled.

unlawful detainer action to confirm that the fees are, in fact, duplicative. Peng presumably has access to those records because Hong Sang made a motion for attorney fees in the unlawful detainer action. It would have been simple enough to correlate specific line items from attorney fee statements in this action with identical line items claimed in the unlawful detainer action. But Peng did not do that. Instead, she claims that certain fees for services rendered in this action *appeared* to be duplicative of fees awarded in the unlawful detainer action, without providing any record of the services for which fees were awarded in the unlawful detainer action. Under the circumstances, she has not met her burden to establish that the fees are duplicative.[12]

### E.   Summary

The trial court awarded contractual attorney fees totaling $113,096.33. We have concluded that the attorney fee award should be reduced by the following amounts: (1) $58,640 for services performed by the Bradley Curley firm in defending against Peng's cross-complaint, (2) $2,043.50 charged by the Steven Adair firm for work associated with the anti-SLAPP motion, and (3) $2,500 charged by the Steven Adair firm for work performed before the effective date of the attorney fee clause (in addition to the $2,500 reduction already taken). The fee award should consequently be reduced by a total of $63,183.50, to $49,912.83.

### DISPOSITION

The amended judgment is reversed to the extent it awards a total of $113,096.33 in attorney fees to Hong Sang. The case is remanded to the trial court with directions to

---

[12]The fees at issue are associated with drafting, finalizing, and serving a three-day notice upon Peng. While these fees may appear to relate to the unlawful detainer action, it is notable that they were incurred in early March through early April 2011, well before Peng stopped paying rent in May 2011 and before Hong Sang served Peng in mid-May 2011 with both a three-day notice to quit and a thirty-day notice terminating the tenancy that formed the basis for the June 2011 unlawful detainer complaint. We lack a sufficient record to know whether the challenged fees were associated with the unlawful detainer action filed in June 2011 or were part of a separate, earlier effort to force Peng to comply with the changed terms of her tenancy that became effective in March 2011.

29

enter a new amended judgment awarding Hong Sang attorney fees totaling $49,912.83. In all other respects, the amended judgment is affirmed.

Hong Sang shall be entitled to recover its costs on appeal.

_____

McGuiness, Acting P.J.[*]


We concur:


_____

Pollak, J.


_____

Siggins, J.


A140653; A141640


_____

[*] Retired Presiding Justice of the Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

<u>Hong Sang Market, Inc. v. Vivien Peng</u>

(A140653; A141640)

Trial court:        San Francisco County

Trial Judge:       Hon. Wallace P. Douglass

Attorneys:        John Kao Law Office and John K. Kao for Defendant, Cross-complainant, and Appellant.

                     Steven Adair MacDonald & Partners, Steven Adair MacDonald, Jethro S. Busch; Bradley, Curley, Asiano, Barrabee, Abel & Kowalski and Michael A. King for Plaintiff, Cross-defendant, and Respondent.